***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Stanback and the briefs and arguments of the parties. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, or rehear the parties or their representatives. Having reviewed the competent evidence of record, the Full Commission affirms, with modifications, the Opinion and Award of Deputy Commissioner Stanback.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in a Pre-Trial Agreement dated November 4, 2009 and at the hearing before the Deputy Commissioner, as: *Page 2 
 STIPULATIONS
1. All parties are properly before the Commission and the Commission has jurisdiction over the parties and subject matter.
2. All have been correctly designated and there is no question as to misjoinder or nonjoinder of parties.
3. The parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act on the date of injury.
4. An employment relationship existed between the Employee-Plaintiff and Employer-Defendant on the date of injury.
5. Employer-Defendant was insured by Cambridge Integrated Services Group, Inc.
6. Employee-Plaintiff last worked for Employer-Defendant on March 21, 2007.
7. Employee-Plaintiff claims temporary total compensation, permanent total compensation, and medical benefits.
8. The dates during which Employee-Plaintiff alleges entitlement to temporary total compensation are: March 21, 2007 to date.
9. The date of the alleged accident is March 21, 2007.
10. At the time of the accident, Employee-Plaintiff's average weekly wage was $733.00 providing her with a compensation rate of $488.67.
11. Documents entered into evidence include the following:
 a. Stipulated Exhibit #1 — Pre-Trial Agreement
 b. Stipulated Exhibit #2 — Plaintiff's Medical Records, Discovery Responses, Affidavit
 c. Defendants' Exhibit #1 — April 2, 2007 Salary Continuation Form *Page 3 
 *********** ISSUES
1. Did Employee-Plaintiff injure her back in the course and scope of her employment on March 21, 2007 and become unable to work on that date as a result thereof?
2. What compensation, if any, is Employee-Plaintiff entitled to receive as a result of said injury?
3. What medical benefits, if any, is Employee-Plaintiff entitled to receive as a result of said injury?
 ***********
Based upon the preponderance of the evidence in view of the entire record, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff is 48 years old and holds a General Equivalency Diploma (GED) and an Associate's Degree. Plaintiff worked at Defendant-Employer's diesel engine manufacturing plant in Whitakers, North Carolina until March 27, 2007.
2. Plaintiff worked at CDC for approximately 19 years, during which time she spent nine years as an assembler, and the last 10 years as a headline technician. Plaintiff stated that she last worked on Defendant-Employer's four-valve line.
3. Plaintiff's medical records reveal a history of back pain dating to as early as December 1997. More proximate to her alleged work injury, on December 29, 2006, Plaintiff presented to Stephen J. Mould, Physician Assistant for Dr. Robert Martin, for right hip pain, bilateral knee pain and some back pain. X-rays of Plaintiff's spine were obtained which showed degenerative facet changes at the L4-L5 and L5-S2 levels. Plaintiff was advised to return in six *Page 4 
weeks, however, she missed an appointment scheduled for February 9, 2007. Plaintiff followed-up with Mr. Mould on March 7, 2007, at which time she complained of bilateral knee pain and quite a bit of pain in her hip and back. On March 17, 2007, four days before her alleged work-related injury, Plaintiff underwent an MRI of her back which identified a significant right-sided posterolateral L4-L5 disk herniation.
4. Leo Heath worked for Defendant-Employer as the third-shift Area Work Coordinator. On March 21, 2007, Mr. Heath moved Plaintiff to a different job in the facility which required less bending because Plaintiff had been complaining of back problems. The job Plaintiff was moved to involved lifting parts from a pallet to a conveyor using a hydraulic lift to perform the lifting. At approximately 11:00 p.m., Plaintiff called Mr. Heath on the radio and told him she was having more problems with her back. Plaintiff did not advise Mr. Heath that she had felt a sudden pain while lifting an engine head using the hydraulic lift. Rather, Mr. Heath testified that, as she was bending to hook an engine head before using the hydraulic lift to lift it onto the conveyor, "she felt something twitching in her back or something."
5. Mr. Heath's account of Plaintiff's mechanism of injury differs considerably from the account of Plaintiff, who testified that she experienced sudden lower back pain while lifting an engine head which weighed 80 pounds.
6. The Full Commission does not find Plaintiff credible regarding her account of her mechanism of injury, or the account of her mechanism of injury which she related to Mr. Heath.
7. Mr. Heath accompanied Plaintiff to Defendant-Employer's medical facility. Plaintiff and Mr. Heath testified that Plaintiff wrote her name on a sign-in sheet upon arriving at the medical facility. Defendant-Employer does not retain copies of the medical facility sign-in sheet. *Page 5 
8. Plaintiff testified that she informed Defendant-Employer's nurse, Ann Coley, that she had injured her back while lifting something on the line.
9. Defendant-Employer's medical personnel are required to initiate a Work Injury Report for all injuries that are reported by the employee to Defendant-Employer's medical staff to be work-related. Once they are informed that an injury is work-related, Defendant-Employer's medical staff is responsible for initiating the process of preparing a Work Injury Report. Once the medical staff initiates the process, the injured employee's supervisor is given an incident report form.
10. The Work Injury Report process is mandatory and Defendant-Employer's supervisors are subject to disciplinary action for failure to follow the procedure. No Work Injury Report was produced for Plaintiff's alleged March 21, 2007 work-related injury.
11. Plaintiff testified that the Work Injury Report process had worked every time prior to her alleged March 21, 2007 work-related injury.
12. Upon completing her shift on March 22, 2007, Plaintiff sought treatment from Dr. Martin. Dr. Martin's note from that date indicates that Plaintiff was seen in follow-up for her back and radiculopathic right leg pain, and made no mention that Plaintiff had injured her back at work the previous day. Plaintiff was sent for an MRI, and, upon reviewing the results, Dr. Martin referred Plaintiff to back surgeon Dr. David C. Miller. Thereafter, Plaintiff saw Dr. Martin for conservative treatment on several other occasions.
13. At no time during the course of his treatment of Plaintiff did Plaintiff inform Dr. Martin that she had injured her back at work.
14. During March of 2007, Plaintiff also received care from Dr. Donald Hart, her family physician, who provided general medical care and treatment for Plaintiff's back pain. *Page 6 
When Plaintiff was seen by Dr. Hart on March 26, 2007, she did not inform him that she had sustained a work-related injury to her back.
15. On May 8, 2007, Plaintiff was seen by Dr. Miller for an evaluation of her back pain and to determine whether she required surgery. As part of his evaluation, Dr. Miller asked Plaintiff how her back pain had started. Plaintiff did not indicate that she had hurt her back at work. Rather, Plaintiff reported that she had been experiencing axial low back pain for approximately one and one-half to two years, and that it had been getting progressively worse. Plaintiff described her job duties to Dr. Miller and indicated that she was required to stand for long periods of time on concrete. However, she did not report an accident, a specific period of time when her pain was exacerbated, or an acute onset of pain occurring on March 21, 2007. Dr. Miller noted in his record that Plaintiff's last day of work was March 27, 2007. Dr. Miller recommended a laminectomy and discectomy at the L4-L5 level to relieve the pressure on the nerve.
16. On May 29, 2007, Plaintiff underwent a right-sided laminectomy/discectomy at the L4-L5 level performed by Dr. Miller. When Plaintiff continued to report back pain as of September 20, 2007, Dr. Miller recommended a second surgery including a laminectomy and fusion at the L4-L5 level.
17. After receiving Dr. Miller's recommendation for a second surgery, Plaintiff sought a second opinion from Dr. Scott Reeg, who saw Plaintiff on October 23, 2007, and again on January 24, 2008. Plaintiff described the same history of back pain to Dr. Reeg that she had to her other physicians, and did not indicate that she had injured her back at work. Dr. Reeg informed Plaintiff that he did not think surgery was a good option for her.
18. Plaintiff returned to Dr. Miller on March 4, 2008, at which time he reviewed Dr. *Page 7 
Reeg's opinion that Plaintiff was not a good candidate for further surgery. Dr. Miller discussed the situation at length with Plaintiff, and Plaintiff decided to proceed with fusion surgery due to her severe ongoing back pain.
19. On April 1, 2008, Dr. Miller performed a second laminectomy, discectomy, and fusion at L4-L5, and a laminectomy at L3-L4.
20. On April 29, 2008, Plaintiff returned to Dr. Miller for a follow-up appointment. On that date, Plaintiff appeared to be healing well and was able to walk with a single cane, and Dr. Miller informed her that she no longer needed to wear a back brace.
21. Plaintiff initiated this workers' compensation claim through the filing of an Industrial Commission Form 18 dated May 2, 2008.
22. Plaintiff has been out of work since March 27, 2007. Since that time, she has received approximately 26 weeks of salary continuation, dating back to her last full day of work on March 27, 2007, as well as long-term disability benefits since September of 2007.
23. Plaintiff obtained an application for salary continuation from Defendant-Employer's medical department which she completed on April 2, 2007. Plaintiff acknowledged that she completed the application without assistance from anyone else, and she identified the handwriting appearing on the application as her own. When asked on cross-examination whether she had checked the box on the application indicating that her claim was not the result of a work-related injury or illness, Plaintiff stated initially, "I guess I did," and then stated, "I don't know if I checked that box or not." Later in the hearing, on re-direct examination, Plaintiff testified that she did in fact check the box on the application indicating that her claim was not the result of a work-related injury or illness. However, Plaintiff testified that this had no significance to her because, at the time she completed the application, she understood the law to require that a work-related *Page 8 
injury be the result of a slip or fall, and she did not experience either. The Full Commission does not find Plaintiff's testimony to be credible with respect to her reason for not indicating that her alleged injury was work-related on the salary continuation application.
24. The physician's portion of the salary continuation application was completed by Dr. Martin, who checked the box on the application indicating that Plaintiff's injury did not arise from her employment.
25. Dr. Miller was deposed in connection with this matter on February 11, 2010. He confirmed that Plaintiff never indicated to him that she had sustained an injury at work and that there was nothing in Plaintiff's chart indicating she had sustained an injury at work. Dr. Miller opined that, although Plaintiff was not totally disabled from work, she was permanently limited to sedentary work.
26. The Full Commission does not find Plaintiff credible regarding her allegation that she sustained an injury by accident or specific traumatic incident to her back on March 21, 2007 while working for Defendant-Employer.
27. Based upon the preponderance of the credible evidence in view of the entire record, including the considerable differences between the testimony of Plaintiff and Mr. Heath regarding the mechanism of Plaintiff's alleged injury, the absence from the record of a Work Injury Report, and the testimony and medical records of the medical providers who treated Plaintiff following her alleged injury, which are devoid of any reference to an injury occurring at work, the Full Commission finds that Plaintiff did not suffer an injury by accident or specific traumatic incident on March 21, 2007 while working for Defendant-Employer.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes *Page 9 
the following:
 CONCLUSIONS OF LAW
1. In a workers' compensation claim, the employee has the burden of proving that her claim is compensable. Henry v. A.C. Lawrence LeatherCo., 231 N.C. 477, 479, 57 S.E.2d 760, 761 (1950). In order for an injury to be compensable under the Workers' Compensation Act, it must be the result of an accident arising out of and in the course of employment. N.C. Gen. Stat. § 97-2(6).
2. Plaintiff has failed to prove by the preponderance of the evidence that she sustained an injury by accident or specific traumatic incident arising out of and in the course of her employment with Defendant-Employer on March 21, 2007. Accordingly, Plaintiff's claim must be denied. N.C. Gen. Stat. § 97-2 (6).
 ***********
Based on the foregoing stipulations, findings of fact and conclusions of law, the Full Commission enters the following:
 ORDER
1. Under the law, Plaintiff's claim must be, and is hereby DENIED.
2. Each side shall bear their own costs.
This the 3rd day of November, 2011.
 S/___________________ LINDA CHEATHAM COMMISSIONER
CONCURRING: *Page 10 
 S/___________________ STACI MEYER COMMISSIONER
 S/___________________ CHRISTOPHER SCOTT COMMISSIONER *Page 1